```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
GEORGE PADULA,

                                    Plaintiff,

          -against-                                              REPORT &
                                                                 RECOMMENDATION
                                                                 21-cv-05391-MKB-SJB
EBAY,
MAXARMORY,

                                    Defendants.
-----------------------------------------------------------------X
```

**BULSARA, United States Magistrate Judge:**

After purchasing a prop gun online, Plaintiff George Padula was arrested, charged, and convicted of gun possession. He commenced this action against eBay Inc. ("eBay") and Maxarmory (collectively, "Defendants") for breach of contract, fraud, violations of the New York General Business Law ("NYGBL"), violations of the consumer fraud and deceptive trade practices acts of the fifty States and the District of Columbia, and unjust enrichment. (Compl. dated Sept. 28, 2021 ("Compl."), Dkt. No. 1; Am. Compl. dated Oct. 13, 2021 ("Am. Compl."), Dkt. No. 6). On March 31, 2022, eBay filed a motion to compel arbitration and requested a stay pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"). (*See* eBay Mot. to Compel Arbitration dated Mar. 31, 2022, Dkt. No. 27). On the same date, Maxarmory filed its own motion to compel arbitration and similarly requested a stay. (*See* Maxarmory Mot. to Compel Arbitration dated Mar. 31, 2022, Dkt. No. 31). For the reasons described below, the Court respectfully recommends that Defendants' motions to compel arbitration be granted, and that, in light of this grant, the requests to stay also be granted.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Padula is currently incarcerated in Allenwood, Pennsylvania. (Am. Compl. ¶ 1). eBay is a California corporation, (*id*. ¶ 2), that "operates a global online marketplace where users offer, sell, and buy items from each other in a variety of pricing formats." (eBay Mem. of Law in Supp. of Mot. to Compel Arbitration dated Mar. 31, 2022 ("eBay Mem."), Dkt. No. 30, at 2). "Maxarmory is a trade name used by Maxsell Corp., a Florida corporation, to market its products online through eBay and its own website." (Maxarmory Mem. of Law in Supp. of Mot. to Compel Arbitration dated Mar. 31, 2022 ("Maxarmory Mem."), Dkt. No. 31, at 2).

Padula alleges that on January 11, 2016 he purchased a movie prop gun from Maxarmory through eBay's website. (Am. Compl. ¶ 6). On December 5, 2016, he was arrested for possession of a firearm.[1] (*Id*. ¶ 9). Padula was subsequently indicted in the Eastern District of New York for, among other charges, illegal possession of a firearm, after the gun was used by another individual in the commission of a crime. (*Id*. ¶ 11). The prop gun was allegedly tested by government ballistics experts who determined that the "starter pistol" could be converted to a working firearm. (*Id*. ¶ 12). Padula contends that because the prop gun could be used as a working weapon, he received a longer

---

[1] There is a discrepancy in the date of Padula's arrest. The Amended Complaint states that Padula was arrested on December 5, 2016. (Am. Compl. ¶ 6). Padula's Affidavit of Merit attached to both oppositions to the motions to compel arbitration states that Padula was arrested on December 15, 2017. (*E.g*., Aff. of George Padula dated Apr. 22, 2022 ("Padula Aff."), attached to Reply in Opp'n to eBay ("Opp'n to eBay"), Dkt. No. 34, ¶ 3). The exact date of arrest is not material to deciding the present motions.

sentence of incarceration.² (*Id.* ¶¶ 11–12; Padula Aff. ¶ 3 ("This arrest and subsequent charge stems from possessing the prop gun that I purchased from the Defendants. . . . I suffered harm as a result of the illegal firearm as I was subsequently sentenced to an increased term of incarceration due to the use of the weapon.")).

The Amended Complaint asserts six claims against the Defendants: (1) breach of contract; (2) fraud; (3) violation of the New York General Business Law's ("NYGBL") prohibition of deceptive acts and practices (N.Y. Gen. Bus. Law § 349); (4) violation of the NYGBL's prohibition of false advertising (N.Y. Gen. Bus. Law § 350); (5) violation of the consumer fraud and deceptive practices acts of all fifty States and the District of Columbia; and (6) unjust enrichment. (Am. Compl. ¶¶ 14–106).

All the claims center around eBay's "Firearms, weapons, and knives policy," which Padula alleges both Defendants violated when selling him the prop gun. (eBay Firearms, Weapons, and Knives Policy ("eBay Firearms Policy"), Ex. A, Dkt. No. 8; Am. Compl. ¶ 9).³ The Policy states in pertinent part: "You can list airsoft guns, replica guns, or other imitation firearms as long as: . . . The item can't be converted to shoot lethal projectiles[.]" (eBay Firearms Policy; Am. Compl. ¶ 10). Among the items that cannot be listed are "[a]irsoft guns, replica guns, or other imitation firearms that can be converted to shoot a lethal projectile" and "[s]tarter pistols or blank guns, regardless of

---

² Judge Dearie determined that the prop gun, or "starter pistol," used in the commission of the crime at issue did qualify as a firearm. (Sentencing Tr. dated June 28, 2021, Ex. C, Dkt. No. 8, at 18:24–19:4).

³ Padula does not directly allege that the policy language provided was in place when the prop gun was purchased in 2016. However, eBay never denies that this Firearms Policy applied to sales and purchases in 2016. The Court will assume for the purpose of deciding these motions that such a policy existed and was applicable to the purchase.

3

their markings." (eBay Firearms Policy; Am. Compl. ¶ 10). Padula alleges that "eBay stated that the prop gun could not be converted to a working gun," (Am. Compl. ¶ 11), and as a result, he believed he would be "receiving a prop gun as intended, not a real firearm." (Padula Aff. ¶ 2). However, because the prop gun could be converted to a working firearm, Defendants breached eBay's policy. (Am. Compl. ¶¶ 22, 33, 44, 63, 81, 100).

To sell or buy items on eBay's website, a potential user "must agree to the [terms of the] eBay User Agreement and Privacy Policy." (Decl. of Nic Conlin dated Mar. 31, 2022 ("Conlin Decl."), Dkt. No. 28, ¶ 4). Individuals must agree to the User Agreement in order to complete their purchase or create an eBay account or guest account. (*Id*. ¶¶ 4–5). "[A]cceptance of the User Agreement is and has always been mandatory in order . . . to purchase an item as a guest." (*Id*. ¶ 7). An individual purchasing an item through eBay is notified of the User Agreement "during the checkout process by a prominently placed message located directly above the 'Confirm and Pay' button." (*Id*. ¶ 4). The message reads: "By clicking Confirm and Pay, you agree to eBay's User Agreement and Privacy Policy." (*Id*.). The purchaser "must click on the 'Confirm and Pay' button indicating their agreement to the User Agreement and Privacy Policy in order to complete their purchase." (*Id*.).

Padula's purchase of the prop gun was governed by eBay's User Agreement dated October 28, 2015. (Conlin Decl. ¶ 17). The Introduction to the User Agreement notes the agreement "contains an Agreement to Arbitrate, which will, with limited exception, require you to submit claims you have against us to binding and final arbitration, unless you opt out of the Agreement to Arbitrate." (eBay's User Agreement effective Oct. 28,

4

2015 ("2015 User Agreement"), attached as Ex. B to Conlin Decl., Dkt. No. 28, at 1). The Agreement to Arbitrate provides as follows:[4]

> PLEASE READ THIS SECTION CAREFULLY. IT AFFECTS YOUR RIGHTS AND WILL HAVE A SUBSTANTIAL IMPACT ON HOW CLAIMS YOU AND EBAY HAVE AGAINST EACH OTHER ARE RESOLVED.
>
> You and eBay agree that any claim or dispute at law or equity that has arisen or may arise between us relating in any way to or arising out of this or previous versions of the eBay User Agreement, your use of or access to the Services, or any products or services sold or purchased through the Services, will be resolved in accordance with the provisions set forth in this Legal Disputes Section.
>
> . . .
>
> B. Agreement to Arbitrate
> You and eBay each agree that any and all disputes or claims that have arisen or may arise between you and eBay relating in any way to or arising out of this or previous versions of the User Agreement, your use of or access to eBay's Services, or any products or services sold, offered, or purchased through eBay's Services shall be resolved exclusively through final and binding arbitration, rather than in court. Alternatively, you may assert your claims in small claims court, if your claims qualify and so long as the matter remains in such court and advances only on an individual (non-class, non-representative) basis. The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate.

(2015 User Agreement at 7). "The arbitration will be conducted by the American Arbitration Association ("AAA") under its rules and procedures[.]" (*Id.* at 8). To reject the Agreement to Arbitrate, the User Agreement contains instructions on how to exercise the "Opt-Out Procedure." (*Id.* at 9).

Padula necessarily must have accepted the User Agreement, including the Agreement to Arbitrate, to complete his purchase of the prop gun. (*See* Conlin Decl. ¶ 7). Padula did not exercise the Opt-Out Procedure. (*Id.* ¶ 14).

---

[4] The User Agreement also provides that Utah law shall govern any claim or dispute that may arise with eBay. (2015 User Agreement at 7).

5

As a seller on eBay, Maxarmory also is a signatory to the eBay User Agreement and bound by its terms.  (Maxarmory Mem. at 7).

The Honorable Margo K. Brodie referred the motions to the undersigned for report and recommendation on November 30, 2022.  (Order Referring Mots. dated Nov. 30, 2022).

DISCUSSION

I. Motion to Arbitrate With Respect to eBay

In a contractual dispute implicating interstate commerce, an arbitration provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; *All. Bernstein Inv. Rsch. & Mgmt., Inc. v. Schaffran*, 445 F.3d 121, 125 (2d Cir. 2006) ("[T]he Federal Arbitration Act (the 'FAA') creates a 'body of federal substantive law of arbitrability' applicable to arbitration agreements . . . affecting interstate commerce."  (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983))); *see also Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1919 (2022).[5]

Section 2 of the FAA reflects "a strong federal policy favoring arbitration as an alternative means of dispute resolution."  *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001); *see Man Fong Wong v. 1st Disc. Brokerage, Inc.*, No. 10-CV-1487, 2011 WL 1298857, at *2 (E.D.N.Y. Jan. 6, 2011) ("The Federal Arbitration Act . . . establishes a 'federal policy favoring arbitration,' requiring federal courts to 'rigorously enforce agreements to arbitrate.'"  (quoting

---

[5] "The parties do not dispute that the agreement at issue here affects interstate commerce and, accordingly, there is no question that the FAA applies."  *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010).

6

*Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987))), *report and recommendation adopted*, 2011 WL 1235756, at *1 (Mar. 31, 2011). Indeed, Section 2 "renders agreements to arbitrate enforceable as a matter of federal law." *Moriana*, 142 S. Ct. at 1917.

> Parties may generally shape [arbitration] agreements to their liking by specifying with whom they will arbitrate, the issues subject to arbitration, the rules by which they will arbitrate, and the arbitrators who will resolve their disputes. Whatever they settle on, the task for courts and arbitrators at bottom remains the same: to give effect to the intent of the parties.

*Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019) (quotations and citations omitted).[6]

Because arbitration agreements are subject to the same principles as other contracts, "a party may be compelled to arbitrate a dispute only to the extent he or she has agreed to do so." *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 569 (S.D.N.Y. 2009) (citing *Bell v. Cendant Corp.*, 293 F.3d 563, 566–67 (2d Cir. 2002)); *see also Bynum v. Maplebear Inc.*, 160 F. Supp. 3d 527, 533–34 (E.D.N.Y. 2016) ("Arbitration is a matter of contract. When enforcing an arbitration agreement, as with any other contract, the parties' intentions control." (quotations and citations omitted)).

"In deciding whether a dispute is arbitrable, [the Court] must answer two questions: (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015). The party resisting arbitration bears the burden of

---

[6] Under the FAA, a party may petition the court "for an order directing . . . arbitration [to] proceed in the manner provided for in [an] agreement," and once the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, [it] shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

7

showing that the arbitration agreement is invalid or does not encompass the claims at issue.  *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

eBay seeks to enforce the provisions contained in the Agreement to Arbitrate.  Padula does not dispute that he accepted the Agreement, contained within the User Agreement, when he purchased the prop gun in January 2016.  He does not claim to have followed the opt-out procedures to reject the arbitration provisions.  This satisfies the first inquiry—Padula agreed to arbitrate claims against eBay.

As to the second inquiry, the language in the Agreement to Arbitrate requiring that "any and all disputes or claims," (2015 User Agreement at 7), related to eBay's services and products sold be arbitrated is "classically broad" and triggers a presumption of arbitrability for the claims asserted in this lawsuit.  *See Holick*, 802 F.3d at 393–94 (affirming conclusion that agreement providing for arbitration of all "claims, disputes, or controversies arising out of, or in relation to this document or Employee's employment" was broad arbitration clause).  "[T]he existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 395 (quoting *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l*, 198 F.3d 88, 99 (2d Cir. 1999)); *Cypress v. Cintas Corp. No. 2*, No. 16-CV-2478, 2017 WL 564492, at *2 (E.D.N.Y. Feb. 11, 2017) ("[I]ssues in cases involving a broad arbitration clause . . . are 'presumptively arbitrable.'  Thus, the Plaintiff bears the burden of establishing that the claims at issue are unsuitable for arbitration." (quoting *Collins & Aikman Prod. Co. v. Building Sys.*, 58 F.3d 16, 20 (2d Cir. 1995)).

All of Padula's claims relate to the advertising and sale of the prop gun on eBay's website. These allegations fit well within the clause providing for arbitration of disputes relating to "any products or services sold, offered, or purchased through eBay's Services." (2015 User Agreement at 7). Indeed, Padula makes no attempt to dispute that the arbitration provisions are broad and the claims in this lawsuit fall within their scope.

What Padula does argue, to avoid arbitration, is that the entire User Agreement and its Agreement to Arbitrate are unenforceable. "'[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements' in accordance with § 2 of the FAA." *Nayal*, 620 F. Supp. 2d at 570 (alteration in original) (quoting *Dr.'s Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). Section 2 of the FAA, therefore, "permits invalidation of arbitration clauses on grounds applicable to 'any contract.'" *Moriana*, 142 S. Ct. at 1917 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339–40 (2011)). The Supreme Court has explained that there are two types of challenges to arbitration clauses: the first challenges "specifically the validity of the agreement to arbitrate," while the second challenges "the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006). Padula's claim is of the second type. The crux of his opposition to eBay's motion is that the User Agreement as a whole (including its embedded Agreement to Arbitrate) is rendered invalid by the illegal sale of a prop gun that can be converted to a working firearm.

9

Padula argues that the User Agreement was invalid and unenforceable for two reasons, (Opp'n to eBay ¶ 4): (1) the misrepresentation that the gun was only a prop gun "voids" the User Agreement and therefore the arbitration provision, (*id.* ¶ 6); (2) the User Agreement "involves illegal activity" and so cannot be valid. (*Id.* ¶ 7). Neither argument has merit.

Padula contends the "User Agreement should be disregarded because [he] never signed or agreed to any agreement with respect to a real gun." (*Id.* ¶ 5). To the extent Padula is contending he was fraudulently induced to sign the User Agreement because of this misrepresentation—that challenge is for the arbitrator to decide, not this Court. There is a distinction between "questions of arbitrability, which are to be resolved by the courts unless the parties have clearly agreed otherwise, and other gateway matters, which are presumptively reserved for the arbitrator's resolution." *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 393 (2d Cir. 2011) (quotations omitted).

Though the User Agreement provides "that issues relating to arbitrability [and] the scope or enforceability of this Agreement to Arbitrate . . . shall be for a court of competent jurisdiction to decide," (2015 User Agreement at 8), this first challenge is one to the agreement as a whole, not the Agreement to Arbitrate specifically. It has long been the law that such claims are the province of the arbitrator. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967) ("[I]f the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally."); *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 170 (2d Cir. 2004). A generalized attack that a contract was fraudulent, a product of illegality,

10

or the product of misrepresentations does not bring Padula's challenge into the Court's decisional ambit. *Garten v. Kurth*, 265 F.3d 136, 143 (2d Cir. 2001) (requiring "substantial relationship between the fraud or misrepresentation and the arbitration clause in particular" (quoting *Campaniello Imps., Ltd. v. Saporiti Italia, S.p.A.*, 117 F.3d 655, 667 (2d Cir. 1997))); *see also ACE Cap. Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 29 (2d Cir. 2002) ("[A] broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud." (quoting *Prima Paint*, 388 U.S. at 402)).

Padula's second challenge—that the User Agreement violates New York General Business Law's prohibition on deceptive practices and false advertising, (Opp'n to eBay ¶¶ 7–8), falls into the same category: a legal challenge to the contract as a whole, and one not directed at the arbitration clause specifically. And as such, the challenge must be heard by the arbitrator in the first instance. *Buckeye Check Cashing, Inc.*, 546 U.S. at 444 (explaining that a challenge that "illegality of one of the contract's provisions renders the whole contract invalid," is a general challenge, not specific to arbitration provision); *e.g.*, *Nicosia v. Amazon.com, Inc.*, No. 14-CV-4513, 2017 WL 10111078, at *16 (E.D.N.Y. Aug. 18, 2017) (holding that plaintiff's claim that he cannot be bound by a contract with Amazon because he was sold illegal goods "is premised not on the invalidity of the arbitration clause nor on the formation or execution of the contract" and so is subject to arbitration), *report and recommendation adopted*, 384 F. Supp. 3d 254, 277 (June 14, 2019), *aff'd*, 815 F. App'x 612, 615 (2d Cir. 2020) ("[W]e agree with the District Court that Nicosia's challenge to the illegality of the contract in its entirety is not a threshold question of arbitrability. It therefore should be considered by the arbitrator in the first instance.").

11

Even if the Court were required to consider Padula's illegality claims, they would fail. Plaintiff alleges that "the misrepresentation of the product effectively voids any purported Agreement between the Plaintiff and the Defendant eBay." (Opp'n to eBay ¶ 6). He further alleges that "Defendant [eBay] mispresented that it would provide the Plaintiff with a prop movie gun and instead provided an illegal firearm." (*Id.* ¶ 9). But eBay made *no* representation about the gun and Padula identifies none. The User Agreement provides that "[t]he actual contract for sale is directly between the seller and buyer. . . . eBay has no control over and does not guarantee the existence, quality, safety, or legality of items advertised; [or] the truth or accuracy of users' content or listings." (2015 User Agreement at 2). The agreement that Plaintiff entered into with eBay was for neither a prop gun nor an illegal firearm. Instead, it "set out the terms on which eBay offers you access to and use of [its] sites, services, applications and tools." (*Id.* at 1).

For the reasons stated above, Padula's challenges to the User Agreement as a whole must be addressed in arbitration.

II.     Motion to Arbitrate With Respect to Maxarmory

Maxarmory was not a signatory to the User Agreement. It, nonetheless, seeks to rely on the Agreement to Arbitrate to compel arbitration of Padula's claims.

Signatories to an arbitration agreement may be compelled to arbitrate claims with a non-signatory. "Under principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of 'the relationship among the parties, the contracts they signed . . . , and the issues that had arisen' among them discloses that 'the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped

12

party has signed.'" *Ragone*, 595 F.3d at 126–27 (quoting *Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, 271 F.3d 403, 406 (2d Cir. 2001)). "In addition to the 'intertwined' factual issues, there must be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." *Doe v. Trump Corp.*, 6 F.4th 400, 412–13 (2d Cir. 2021) (quotations omitted). Ultimately, "to establish equitable estoppel in the present context so as to bind a signatory of a contract (here, the plaintiff[]) to arbitrate with one or more non-signatories . . . , there must be a close relationship among the signatories and non-signatories such that it can reasonably be inferred that the signatories had knowledge of, and consented to, the extension of their agreement to arbitrate to the non-signatories." *Id.* at 414.

Padula's claims against Maxarmory are identical and indistinguishable from those against eBay—against both Defendants, Padula is alleging the sale of the prop gun constituted a breach of the same agreement with him. For example, in Count I, Padula alleges that both Maxarmory and eBay "intentionally breached this agreement" by selling him a prop gun that is convertible to a real gun. (Am. Compl. ¶ 22). Other than allegations about the parties themselves, there are no separate factual allegations or legal claims against Maxarmory distinct from those against eBay. The two are treated as one and the same. (*E.g.*, *id.* ("Defendants intentionally breached this agreement."); *id.* ¶ 33 ("Defendants fraudulently state on their website that the product was a prop gun."); *id.* ¶ 46 ("Defendants misleadingly, inaccurately, and deceptively presents its Product to consumers."); *id.* ¶ 65 ("Defendants [sic] advertising, packaging and products labeling induced the Plaintiff to buy Defendants [sic] Product.")). As such "there is . . . no

13

question that the subject matter of the dispute between [Padula and Maxarmory] is factually intertwined with the dispute between [Padula and eBay]. It is, in fact, the same dispute[.]" *Ragone*, 595 F.3d at 128. Indeed, the claims against the two parties "could hardly be more closely bound." *Choctaw Generation Ltd. P'ship*, 271 F.3d at 406.

As to the relationship between the signatory, eBay, and non-signatory, Maxarmory, unlike most arbitration estoppel situations, the two are distinct, unrelated corporations. Nonetheless, estoppel extends "beyond situations involving affiliated corporate entities" where "the signatory seeking to avoid arbitration treated the other signatory and nonsignatory as interchangeable with respect to its rights and responsibilities under the relevant contract." *Doe*, 6 F.4th at 413.

That is the situation here. Padula treats Maxarmory and eBay as one and the same in the Amended Complaint, making no distinct allegations against Maxarmory. The theory of the Amended Complaint is the same against both: that both Defendants were the sellers of the prop gun. As noted, Padula alleges that eBay and Maxarmory breached "this agreement"—which, as an aside, he never identifies—by selling him a convertible prop gun. (Am. Compl. ¶ 22). Padula was hardly unaware of Maxarmory's role in the transaction such that extending the arbitration provisions to it would either be unexpected or inequitable. Because Padula treats Maxarmory "as interchangeable" with eBay, Maxarmory is also entitled to have his claims arbitrated. *Doe*, 6 F.4th at 413; *Convergen Energy LLC v. Brooks*, No. 20-CV-3746, 2020 WL 5549039, at *17 (S.D.N.Y. Sept. 16, 2020) ("There is also a relationship among the parties that justifies arbitration. Courts have generally found such 'close relationship' . . . where the non-signatory had an active role in the transaction between the signatories[.]" (quotations omitted)); *e.g.*, *Glover v. Bob's Disc. Furniture, LLC*, No. 20-CV-10924, 2022 WL 3353454, at *4

14

(S.D.N.Y. Aug. 12, 2022) ("The facts forming the basis of the claims are in large part pleaded against Bob's and Guardian as a single unit. These circumstances constitute a sufficiently close relationship for the purposes of estoppel."); *Greene v. Kabbalah Ctr. Int'l, Inc.*, No. 19-CV-4304, 2022 WL 4006903, at \*12 (E.D.N.Y. Sept. 1, 2022) ("And the relationship between the Individual Defendants and the Centre, according to the Arbitration Plaintiffs' own allegations, overlaps entirely. . . . Given this relationship, it is appropriate to require the claims against the Individual Defendants to proceed to arbitration."); *Cho v. JS Autoworld 1 Ltd.*, 97 F. Supp. 3d 351, 357 (E.D.N.Y. 2015) ("Having elected to group the Defendants together in the complaint as an interchangeable unit . . . , the Plaintiff's attempt to avoid arbitration by pointing to their distinctness is unpersuasive.").[7]

Both elements of the estoppel inquiry are satisfied here and therefore, the Court concludes that Padula is equitably estopped from avoiding Maxarmory's reliance on the Agreement to Arbitrate.

III.   Stay of Proceedings

Both Defendants have asked the Court to stay the action pending arbitration. (*See* eBay Mem. at 9; Maxarmory Mem. at 11). The FAA provides that the court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration . . . , shall on application of one of the parties stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3; *see Bynum*, 160 F. Supp. 3d at 534 ("If a

---

[7] The one case Padula cites in support of his opposition to estoppel applies South Dakota law and is, in any event, inapposite. (Reply in Opp'n to Maxarmory, Dkt. No. 35, ¶ 11 (citing *Madorskaya v. Frontline Asset Strategies, LLC*, No. 19-CV-895, 2021 WL 3884177 (E.D.N.Y. Aug. 31, 2021))). There the non-signatory defendants sought to invoke estoppel on an agency theory and the claims at issue were based on distinct misconduct by the non-signatory. *Madorskaya*, 2021 WL 3884177, at \*11–\*12.

court is satisfied that a matter is arbitrable under an arbitration agreement, section 3 of the FAA provides for a stay of legal proceedings."). All of Plaintiff's claims are arbitrable and thus the Court stays the entire action pending the outcome of arbitration. *See, e.g.*, *Victorio v. Sammy's Fishbox Realty Co., LLC*, No. 14-CV-8678, 2015 WL 2152703, at *19 (S.D.N.Y. May 6, 2015) ("Upon Defendants' application, this Court will stay Plaintiffs' lawsuit pending the outcome of arbitration.").

CONCLUSION

For the reasons described above, the Court respectfully recommends that Defendants' motions to compel arbitration be granted pursuant to 9 U.S.C. § 4 and that this action be stayed pursuant to 9 U.S.C. § 3. In light of the recommendation that the motions to compel arbitration be granted, the Court does not address the motion to dismiss arguments advanced by Defendants which should be decided in arbitration. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("We have held that a court may not rule on the potential merits of the underlying claim that is assigned by contract to an arbitrator[.]" (quotations omitted)).

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[ ] [judge's] report operates as a waiver of any further judicial review of the magistrate[ ] [judge's] decision." (quotations omitted)).

SO ORDERED.

<u>/s/ *Sanket J. Bulsara*  December 29, 2022</u>
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York